PEARSON, J.

NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JLKX CORPORATION, *et al.*, ) | |
| ) | CASE NO. 4:15cv1993 |
| Plaintiffs, ) | |
| ) | |
| v. ) | JUDGE BENITA Y. PEARSON |
| ) | |
| BOBCAT ENERGY RESOURCES, LLC, *et al.*, ) ) | |
| ) | **MEMORANDUM OF OPINION AND** |
| Defendants. ) | **ORDER** [Resolving ECF No. 23] |

Pending before the Court is a motion to dismiss filed by Defendants Bobcat Energy Resources, LLC, Bobcat Well & Pipeline, LLC, and Resource Land Holdings, LLC. ECF No. 23. Defendants urge dismissal on the grounds that the Court lacks jurisdiction over the claims brought by Plaintiffs because the United States Bankruptcy Court for the Northern District of Ohio has retained exclusive jurisdiction to adjudicate the claims. The Court has been advised, having reviewed the record, the parties' briefs and the applicable law. For the reasons set forth below, the Court denies the motion.

## I. Background and Procedural Facts

Plaintiffs are a group of investors who own various joint ventures, previously operated by D&L Energy, Inc. ("D&L") for the purpose of producing oil and gas. ECF No. 9 ¶¶ 1–14. The joint ventures are governed by Operating Agreements, Subscriptions Agreements, and Certificates of Agreements (collectively, "Agreements"). *See* ECF No. 28-1 (exemplar of an Operating Agreement). Plaintiffs allege that, under the Agreements, D&L was required to

(4:15cv1993)

disburse revenues generated by the joint ventures after accounting for royalty interests for landowners and managers.  ECF No. 9 ¶ 21.

D&L filed for bankruptcy on April 16, 2013.  *See In re D & L Energy, Inc.*, Case No. 13-40813, Northern District of Ohio, Bankruptcy Court, Eastern Division.  Subsequently, Defendants entered into a Stalking Horse Asset Purchase Agreement ("Stalking Horse APA") with D&L which, among other things, resulted in D&L assigning to Defendants its interest in the joint ventures that are the subject to this litigation.  ECF No. 28-2 at PageID #: 1122.  Pursuant to the terms of the order approving the Stalking Horse APA ("Bankruptcy Order"), Defendants assumed "[a]ny and all accrued liability that [D&L] may have to plug wells where [D&L is] transferring their interests as operator/owner of the well to [Defendants] under this Agreement," as well as "[a]ny requirement of maintenance and/or repair existing as of the date of Closing in relation to the well sites associated with the Acquired Assets in those circumstances where Buyer is purchasing Sellers' interest in a joint venture."  ECF No. 28-2 at PageID #: 1150.  The bankruptcy court retained exclusive jurisdiction to

> (a) interpret and enforce the provisions of the Stalking Horse APA (including any and all amendments thereto) and this Sale Order in all respects; … (c) hear, determine and resolve any and all disputes arising from the construction or implementation of the Stalking Horse APA or this Sale Order; … (e) determine any disputes raised by non-debtor/counterparties concerning the assumption and assignment of the Contract to Buyer.

ECF No. 28-2 at PageID #: 1114.  The bankruptcy court declined, however, to exercise jurisdiction "over non-debtor affiliates referenced in the attached Asset Purchase Agreement (the "Stalking Horse APA"), and is approving the sale transactions for which that agreement provides only insofar as it pertains to property of the estate, the Debtors and their actions."  ECF No. 28-2

2

(4:15cv1993)

at PageID #: 1095.

Plaintiffs allege that, as soon as Defendants took over as managers of the joint ventures and wells, they began to breach the governing Operating Agreements by refusing to pay required revenue distributions to Plaintiffs; issuing notices identifying wells to be plugged and associated costs without affording Plaintiffs certain protections; withholding monies owed to Plaintiffs to defray Defendants' expenses of anticipated future plugging costs; and improperly seeking to recoup from Plaintiffs deficiencies in the parties' Joint Interest Billing ("JIB") accounts.

Plaintiffs filed a complaint in state court on August 31, 2015, alleging claims for (1) breach of contract; (2) breach of fiduciary duty; (3) gross negligence and misconduct; (4) constructive trust; (5) declaratory judgment; and (6) an accounting.  ECF No. 1-2.  Defendants removed the case to federal court (ECF No. 1) and moved to dismiss.  ECF No. 5.  Plaintiff filed an amended complaint on October 16, 2015.  ECF No. 9.  Defendants then moved to dismiss for lack of subject-matter jurisdiction.  ECF No. 23.  Plaintiffs opposed.  ECF No. 28.  Defendants replied.  ECF No. 29.  The matter is ripe for adjudication.

## II.  Legal Standard

Federal Rule of Civil Procedure 12(b)(1) allows dismissal for "lack of jurisdiction over the subject matter" of claims asserted in the complaint.  Fed. R. Civ. P. 12(b)(1).  A motion to dismiss for lack of subject-matter jurisdiction may involve either facial attacks or factual attacks upon a court's jurisdiction.  *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  "A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading."  *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir.

(4:15cv1993)

2007). When resolving a facial attack, the reviewing court assumes the allegations within the complaint are true. *Id.* "Where, on the other hand, there is a factual attack on the subject-matter jurisdiction alleged in the complaint, no presumptive truthfulness applies to the allegations." *Id.* When reviewing a factual attack, the court must weigh the conflicting evidence to determine whether subject-matter jurisdiction exists. *Howard v. Whitbeck*, 382 F.3d 633, 636 (6th Cir. 2004). Plaintiffs bear the burden of establishing that jurisdiction exists. *Madison–Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996). Lack of subject-matter jurisdiction is a non-waivable, fatal defect. *Von Dunser v. Aronoff*, 915 F.2d 1071, 1074 (6th Cir. 1990).

### III.  Analysis

Bankruptcy courts may exercise subject-matter jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334. A bankruptcy court may make final determinations concerning "all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11." 28 U.S.C. § 157(b)(1). For non-core proceedings, a bankruptcy court is only permitted to submit proposed findings and fact and conclusions of law to the district court for review. 28 U.S.C. § 157(c)(1). The distinction between core and non-core proceedings is fundamental to the bankruptcy court's jurisdiction. *In re Bavelis*, 773 F.3d 148, 156 (6th Cir. 2014). To constitute a non-core proceeding, the matter must satisfy the following criteria:

> (1)  It is not specifically identified as a core proceeding under § 157(b)(2)(B) through (N);
>
> (2) The cause of action existed prior to the filing of the bankruptcy petition;
>
> (3) The cause of action would continue to exist independent of the provisions of

(4:15cv1993)

>  title 11; and

>  (4) The parties rights, obligations, or both, are not specifically affected as a result of the filing of the bankruptcy petition.

*Id.* Defendants challenge Plaintiffs' ability to satisfy the first of these requirements. Defendants argue that, because Plaintiffs' claims relate to the rights and responsibilities for the joint ventures acquired in the Bankruptcy Order, Plaintiffs' claims arise from the Bankruptcy Order itself and necessarily require interpretation of the Bankruptcy Order. ECF No. 29 at PageID #: 1153. This, Defendants argue, renders the Bankruptcy Order, an "order[] approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate," and a core proceeding under the Bankruptcy code. 28 U.S.C. § 157(b)(2)(N).

Defendants' argument ignores that, as pleaded, Plaintiffs' claims arise from obligations in the Operating Agreements, not the Bankruptcy Order. Plaintiffs' claims "exist outside of the bankruptcy," *In re Wolverine Radio Co.*, 930 F.2d 1132, 1144 (6th Cir. 1991) because each cause of action alleged by Plaintiffs—(1) breach of contract; (2) breach of fiduciary duty; (3) gross negligence and misconduct; (4) constructive trust; (5) declaratory judgment; and (6) an accounting—can be asserted against a party absent any related proceedings in bankruptcy court. For example, Plaintiffs allege that Defendants breached "the terms of the Operating Agreements and related instruments by failing to make all required distributions to the Plaintiffs and the Class and have otherwise breached the agreement by failing and refusing to accept their obligation to remain responsible for all future, anticipated plugging costs." ECF No. 9 ¶ 36. The merits of Plaintiffs' claim is evaluated by reference to the Operating Agreements, not the Bankruptcy

5

(4:15cv1993)

Order through which Defendants acquired the rights and liabilities set forth in the Operating Agreements. Similarly, the Bankruptcy Order is not necessary to resolve Plaintiffs' other claims. Plaintiffs' case, therefore, falls outside of the language of 28 U.S.C. § 157(b)(2)(N), because their causes of action do not constitute an "order[] approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate." As such, the Bankruptcy Order's status as a core or non-core proceeding has no effect on the Court's jurisdiction over the instant case.

Defendants' argument that the bankruptcy court retained exclusive jurisdiction over Plaintiffs' causes of action is similarly unavailing. Defendants contend that "Plaintiffs' claims involve rights and responsibilities arising out of the various joint ventures purchased under the Stalking Horse APA." While true, this does not place the instant case within the bankruptcy court's exclusive jurisdiction. Schedule 1.1(a) of the Stalking Horse APA, ultimately approved by the bankruptcy court in the Bankruptcy Order, lists the Joint Ventures as a group of the assets to be purchased by Defendants:

> **1. Operations and Management of Wells, Pipelines, Joint Ventures, and underlying Held By Production Leases.** This category includes the Debtors' rights, title, interest and responsibilities, as such may be, in each individual asset, including:
>
> ...
>
> **1(c) - Operation of Joint Ventures** pursuant to the operating agreement of each joint venture, and to the extent that such operations may be transferred each and all as detailed in Exhibit 1 to Schedule 1.1(a) and incorporated herein by reference.

ECF No. 28-2 at PageID #: 1139–40. Defendants agreed to purchase D&L's "rights, title,

(4:15cv1993)

interest and responsibilities" in the operation of the joint ventures at issue, subject to "the operating agreement of each joint venture." The Stalking Horse APA evinces, therefore, that the merits of Plaintiffs' claims are determined by reference to the joint venture Operating Agreements, not the terms of the Stalking Horse APA or the Bankruptcy Order. The Bankruptcy Order need not be interpreted, enforced, or construed to determine whether Defendants are liable under the Operating Agreements. Because the Operating Agreements, not the Stalking Horse APA or the Bankruptcy Order, govern Plaintiffs' claims, this case does not fall within the categories of actions for which the bankruptcy court retained jurisdiction.

As pleaded in the amended complaint (ECF No. 9), Plaintiffs' claims do not constitute an "order[] approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate." 28 U.S.C. § 157(b)(2)(N). Nor do they fall within the definitions of cases over which the bankruptcy court retained exclusive jurisdiction. *See* ECF No. 28-2 at PageID #: 1114. Accordingly, there is no basis for concluding that the Court is deprived of subject-matter jurisdiction over Plaintiffs' claims.

### IV.  Conclusion

Based on the forgoing, Defendants' motion is denied.

IT IS SO ORDERED.

| | |
|---|---|
| May 16, 2016 | */s/ Benita Y. Pearson* |
| Date | Benita Y. Pearson |
| | United States District Judge |