PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| JLKX CORPORATION, *et al.*, ) | |
| ) | CASE NO. 4:15CV1993 |
| Plaintiffs, ) | |
| ) | |
| v. ) | JUDGE BENITA Y. PEARSON |
| ) | |
| BOBCAT ENERGY ) | |
| RESOURCES, LLC, *et al.*, ) | **MEMORANDUM OF OPINION** |
| ) | **AND ORDER** |
| Defendants. ) | [Resolving ECF Nos. 122, 124, and 131] |

Pending is Everflow Eastern Partners, L.P.'s ("Everflow") Motion to Intervene for Limited Purpose of Objecting to Motion for Preliminary Approval of Settlement (ECF No. 124), filed 3 ½ years after the above-entitled case was filed. Everflow moves the Court for an Order allowing it to intervene in the above-entitled certified class action as a matter of right under Fed. R. Civ. P. 24(a)(2) solely for the limited purpose of opposing the Parties' Joint Motion for Approval of Preliminary Settlement Agreement (without exhibits) (ECF No. 122).[1]

Also pending is the Parties' Joint Motion for Preliminary Approval of First Amended Class Action Settlement (ECF No. 131) pursuant to Fed. R. Civ. P. 23.[2]

---

[1] On July 17, 2019, the Parties filed a Joint Motion for Preliminary Approval of First Amended Class Action Settlement (ECF No. 131). Therefore, ECF No. 122, filed on February 6, 2019, is moot. It wasn't until then that the Court received the exhibits to the Settlement Agreement. The proposed First Amended Class Action Settlement Agreement (ECF No. 131-1) addresses many of the concerns raised by Everflow in its opposition to the Parties' initial proposed settlement agreement (ECF No. 125).

[2] "Parties" refers to Plaintiffs and Defendants in the case at bar.

(4:15CV1993)

The Court has been advised, having reviewed the record, the parties' briefs, and the applicable law. For the reasons set forth below, ECF No. 124 is denied and ECF No. 131 is granted.[3]

## I.

Everflow is engaged in the business of oil and gas acquisition, exploration, development, and production. As part of its business, Everflow acquires, among other things, working interests in various wells in Ohio and Pennsylvania. Defendants Resource Land Holdings, LLC ("RLH"), Bobcat Energy Resources, LLC ("Bobcat"), and Bobcat Well & Pipeline, LLC ("BW&P") (collectively, "Defendants") currently operate approximately 240 wells in which Everflow owns an undivided working interest pursuant to an Operating Agreement that Everflow originally entered into with D&L Energy, Inc. ("D&L Energy") in 2004. *See* Operating Agreement (ECF No. 124-1).[4] Of those 240 wells that Bobcat operates for Everflow, approximately 120 are wells that the Class Members also have working interests in through their joint ventures and would be subject to the proposed First Amended Class Action Settlement Agreement (ECF No. 131-1).

D&L Energy filed a petition under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Ohio, Case No. 13-40813. On October 30, 2014, the Bankruptcy Court authorized the sale of substantially all of the debtors'

---

[3] The Court has, however, considered Everflow's objections to the settlement (ECF Nos. 125 and 132) in the interests of justice.

[4] The initial draft of the Operating Agreement was presented to Everflow by Ben W. Lupo of D&L Energy, and the parties mutually negotiated off of that initial draft prepared by D&L Energy. *See* Declaration of Thomas L. Korner (ECF No. 130-3). The Operating Agreement also contains a series of amendments to Appendix 1, the most recent of which is dated March 16, 2011. ECF No. 124-1 at PageID #: 3074.

2

(4:15CV1993)

assets to RLH. *See* Doc 1044 in the D&L Energy bankruptcy case (ECF No. 69-1). Pursuant to that order, the Operating Agreement between D&L Energy and Everflow was assigned to and assumed by RLH, which designated Bobcat as Operator. *See* Doc 791 at Page 3 of 8 in the D&L Energy bankruptcy case (ECF No. 130-1 at PageID #: 3203). According to Everflow, Bobcat remains the Operator for Everflow's wells under the Operating Agreement (ECF No. 124-1).[5] Defendants took over operations for Everflow's wells under the Operating Agreement on December 1, 2014.

This action was removed from the Mahoning County, Ohio Court of Common Pleas to this Court on September 25, 2015. On October 16, 2015, Plaintiffs[6] filed a First Amended

---

[5] According to Defendants, Bobcat then transferred title to BW&P, one of its wholly-owned subsidiaries pursuant to ¶ 21 of the Operating Agreement:
> This Agreement shall be binding upon the parties to this Agreement and their respective heirs, successors and assigns. Operator shall not assign its rights and obligations under this Agreement without the prior written consent of persons owning a majority of the working interest in the Well; provided, however, that Operator may assign, without the prior written consent of Owner, its rights and obligations to a subsidiary of Operator, the parent company of Operator or to another company in which Operator or an affiliate of Operator owns a majority of the stock in connection with the transfer of all or substantially all of its assets provided the assignee assumes in writing and agrees in writing to perform and be bound by all of the provisions of this Agreement which are the obligation of Operator to perform or satisfy.

ECF No. 124-1 at PageID #: 3068-69. Everflow contends, however, that Bobcat is the true Operator because Everflow never approved the transfer of the Operator role from Bobcat to BW&P pursuant to ¶ 21 of the Operating Agreement. ECF No. 124 at PageID #: 3053; ECF No. 130 at PageID #: 3188-91; ECF No. 132 at PageID #: 3423. In order to address this concern, the Parties included the following safety net provision in § 3.15 of the proposed First Amended Class Action Settlement Agreement: "To the extent not conveyed in the Purchase Agreement for Diamond Energy's purchase of the membership interest of BW&P, Bobcat and BW&P shall transfer any and all rights as Manager of the Joint Ventures and Operator of the Diamond Wells to Diamond Energy and/or its affiliate. . . ." ECF No. 131-1 at PageID #: 3246.

[6] JLKX Corporation; EJ Esposito Investments, LLC; Helen Esposito Properties,
(continued...)

(4:15CV1993)

Complaint With Class Action Allegations (ECF No. 9). Count One is for breach of contract. Count Two alleges breach of fiduciary duty. Count Three is for gross negligence and misconduct. Count Four requests a constructive trust. Count Five is for declaratory judgment. Count Six requests an accounting.

Plaintiffs allege that Defendants have been: (1) improperly calculating distributions owed to the Class Members; (2) failing to pay distributions owed to the Class Members; (3) improperly charging the Class Members for certain well plugging liabilities; (4) failing to provide timely and adequate financial reporting to the Class Members for oil and gas production; (5) failing to make prudent operational decisions that have impacted the productivity of the wells; and (6) improperly holding the Class Members responsible for reimbursement of attorneys' fees, forensic accounting fees, and a $400,000 settlement payment made by Bobcat to D&L Energy's Chapter 7 Bankruptcy Trustee.

On August 23, 2017, Plaintiffs re-filed their Motion for Class Certification (ECF No. 53),[7] which the Court granted without opposition on October 25, 2017. The Court certified the following class:

> All non-operator joint venturers, who have not received required distributions from Defendants, in the joint venture programs ("DL-JVs") identified by the following program names: DL-JV 82-2; DL-JV 87-3; DL-JV 90-1; DL-JV 90-2; DL-JV 91-1; DL-JV 91-2; DL-JV 92-1; DL-JV 92-3; DL-JV 92-5; DL-JV 92-6;

---

[6](...continued)
LLC; Janet Hazboun Investments, LLC; Edward Hazboun Holdings, LLC; ESPO Energy I, LLC; Travaglini Energy Group, LLC; Michael J. Miladore and Diane Miladore; Fred Knox Revocable Trust; Fred Knox Irrevocable Trust; Jeffrey Nekrutman and Susan Nekrutman; and, JKT Trucking, Inc. (collectively, "Plaintiffs").

[7] On December 22, 2016, the Parties filed a Joint Motion for Stay of Proceedings, so they could pursue a settlement of the matter (ECF No. 44). Thereafter, the Court stayed and administratively closed the case. *See* Order (ECF No. 46). The case was reopened on July 17, 2017.

(4:15CV1993)

> DL-JV 92-7; DL-JV 92-8; DL-JV 92-10; DL-JV 93-1; DL-JV 93-2; DL-JV 93-4; DL-JV 94-1; DL-JV 94-4; DL-JV 94-5; DL-JV 94-6; DL-JV 94-6 / 94-2; DL-JV 95-1; DL-JV 95-2; DL-JV 95-5; DL-JV 95-7; DL-JV 95-8; DL-JV 95-9; DL-JV 96-1; DL-JV 96-2; DL-JV 96-3; DL-JV 96-4; DL-JV 97-1; DL-JV 98-1; DL-JV 98-3; DL-JV 99-1; DL-JV 2000-1; DL-JV 2000-2; DL-JV 2000-7; DL-JV 2000-11; DL-JV 2000-13; DL-JV 2000-14; DL-JV 2000-15; DL-JV 2001-1; DL-JV 2001-2; DL-JV 2001-3; DL-JV 2001-4; DL-JV 2001-5; DL-JV 2001-6; DL-JV 2001-7; DL-JV 2001-8; DL-JV 2001-9; DL-JV 2001-10; DL-JV 2001-11; DL-JV 2001-12; DL-JV 2001-13; DL-JV 2001-14; DL-JV 2001-15; DL-JV 2001-16; DL-JV 2002-1; DL-JV 2002-2; DL-JV 2002-3; DL-JV 2002-4; DL-JV 2002-5; DL-JV 2002-6; DL-JV 2002-7; DL-JV 2003-1; DL-JV 2003-3; DL-JV 2003-4; DL-JV 2003-5; DL-JV 2003-8; DL-JV 2004-1; DL-JV 2004-2; DL-JV 2004-3; DL-JV 2004-4; DL-JV 2004-6; DL-JV 2004-7; DL-JV 2004-8; DL-JV 2005-1; DL-JV 2005-2; DL-JV 2005-3; DL-JV 2005-4; DL-JV 2005-5; DL-JV 2006-1; DL-JV 2006-2; DL-JV 2006-3; DL-JV 2006-4; DL-JV 2007-1; DL-JV 2007-2; DL-JV 2007-3; DL-JV 2008-1; DL-JV 2008-2; DL-JV 2008-3; DL-JV 2008-4; DL-JV 2008-5; DL-JV 2009-1; DL-JV 2010-1; DL-JV 2010-3; DL-JV 2010-4; DL-JV 2011-1, and any DL-JV entities identified in the First Amended Complaint (ECF No. 9).

Order (ECF No. 56). The DL-JV Class Members are approximately 240 joint venture investors in a series of oil and gas wells.

On March 9, 2018, Defendants, with leave of Court, filed a Counterclaim (ECF No. 63) for breaches of contract that is the same as its defense to Plaintiffs' request for declaratory judgment. Defendants contend the Class Members are responsible for certain unpaid operating expenses (including the settlement with the Chapter 7 Trustee) and plugging liabilities for the wells in which the Class Members have invested.

Everflow and its counsel were invited to participate in the July 12, 2018 Status Conference. *See* Order (ECF No. 82) at PageID #: 2507. Everflow and its counsel attended and participated in the discussions held at the Thomas D. Lambros United States Court House on that date.

The case at bar was set for trial on February 11, 2019. *See* Amended Civil Trial Order (ECF No. 62). On the eve of trial, the Parties reached a settlement of their dispute and filed a

5

(4:15CV1993)

Joint Motion for Approval of Preliminary Settlement Agreement (without exhibits) (ECF No. 122).

Three days before filing the within Motion to Intervene (ECF No. 124), Everflow filed a lawsuit in the Mahoning County, Ohio Court of Common Pleas, against the same Defendants in the case at bar, for, *inter alia*: (1) breach of contract; (2) breach of fiduciary duty; and, (3) an accounting. *See Everflow Eastern Partners, L.P. v. Bobcat Energy Resources, LLC, et al.*, Case No. 2019 CV 00320. *See* Complaint (ECF No. 124-2). Everflow alleges in the state court action that BW&P is not the current operator of Everflow's wells. Rather, Bobcat remains Everflow's operator under its Operating Agreement (ECF No. 124-1). ECF No. 124-2 at PageID #: 3079, ¶ 19.[8]

The proposed First Amended Class Action Settlement Agreement (ECF No. 131-1) entails, *inter alia*, the replacement of BW&P, as the Operator of the Class Members' working interest ownerships in the wells, with a new company, Diamond Energy Partners, LLC ("Diamond Energy"). The settlement will be implemented through the sale of BW&P's membership interests to Diamond Energy. Diamond Energy will simply assume the roles of Manager/Operator under the original contracts with the Class Members. The Plaintiffs' Class Representatives have selected, vetted, and approved Diamond Energy as an appropriate Operator that will work with the Class Members to avoid the disputes that arose with Defendants. While the Class Members own approximately 77 wells outright, they also share working interests in some of those wells with Everflow and other oil and gas industry operators ("Industry

---

[8] This issue remains pending before the state court. On August 12, 2019, the state court denied RLH, Bobcat, and BW&P's Motion to Dismiss. On August 30, 2019, RLH, Bobcat, and BW&P filed an Answer and Counterclaim for (1) breach of contract and (2) quantum meruit.

(4:15CV1993)

Partners").[9] Therefore, the Parties structured a settlement that does not require Everflow's (or any other industry partners') participation. The Settlement Agreement is limited to the Class Members' working interests. Everflow's working interests are not part of the Settlement Agreement, and the Settlement Agreement defers to good-faith negotiations and the existing contracts for future operations of non-Class Member working interests. For example, Diamond Energy will only provide services to the extent the governing operating agreements allow. *See* Master Services Agreement (ECF No. 131-1 at PageID #: 3406-16).

According to Everflow, while the Parties appear to have addressed many of the concerns raised in its opposition to the parties' initial proposed settlement agreement (ECF No. 125), there remain provisions in the proposed First Amended Class Action Settlement Agreement (ECF No. 131-1) that attempt to adversely affect Everflow's rights under its Operating Agreement with Bobcat (ECF No. 124-1) and that are currently the subject of the pending case initiated by Everflow in the Mahoning County, Ohio Court of Common Pleas. ECF No. 132 at PageID #: 3418.

**II.**

According to Everflow, the Parties seek to enter into a settlement that will adversely affect it in many material ways that violate Everflow's due process rights. Everflow argues the Parties seek to (1) change the Operator for Everflow's wells without its consent or approval and (2) allow Everflow's revenue from its wells to be held and used to offset expenses of wells in

---

[9] Diversified Gas & Oil, PLC is one of the Industry Partners. Its counsel also attended and participated in the discussions held at the courthouse in July 2018. It has not, however, filed a motion to intervene and/or a memorandum in opposition to either ECF No. 122 or ECF No. 131.

7

(4:15CV1993)

which Everflow does not have an interest.[10] Everflow maintains the settlement would thus materially violate Everflow's rights in its wells.

Fed. R. Civ. P. 24(a)(2) governs motions to intervene as-of-right. That rule provides: "On timely motion, the court must permit anyone to intervene who: . . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Thus, intervention as-of-right will be granted only where the intervenor can show: "(1) timeliness of the application to intervene, (2) . . . substantial legal interest in the case, (3) impairment of the applicant's ability to protect that interest in the absence of intervention, and (4) inadequate representation of that interest by parties already before the court." *United States v. Tennessee*, 260 F.3d 587, 591-92 (6th Cir. 2001) (citing *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997)); *see also Rowe v. E.I. DuPont de Nemours & Co.*, Nos. 06-1810 (RMB/AMD), 06-3080 (RMB/AMD), 2011 WL 3837106, at *4 (D.N.J. Aug. 26, 2011) (courts recognize an ownership interest and the protection of that interest as a "significantly protectable" interest).

Plaintiffs argue that the Motion to Intervene is untimely. ECF No. 127 at PageID #: 3155-56. The Court disagrees because the motion was filed nine (9) days after the Parties' filed their Joint Motion for Approval of Preliminary Settlement Agreement (without exhibits) (ECF No. 122). Much like the intervenor in *Grubbs v. Norris*, 870 F.2d 343 (6th Cir. 1989), the terms

---

[10] A third objection that the Parties seek to modify the standards under which Everflow's wells may be operated, plugged, and abandoned was previously made to the proposed Class Action Settlement Agreement (ECF No. 122-1). *See* ECF No. 125 at PageID #: 3126-27. That objection has not been made to the proposed First Amended Class Action Settlement Agreement (ECF No. 131-1). *See* ECF No. 132.

8

(4:15CV1993)

of the settlement agreement itself, not the litigation, is what has triggered Everflow's "clear interest in the action." *Id.* at 346.

Everflow argues the fact that the Parties are seeking to impose changes that affect Everflow's rights and interests in its wells provides grounds for intervention. *See In re Masters Mates & Pilots Pension Plan and IRAP Litig.*, 957 F.2d 1020, 1026 (2d Cir. 1992) ("[w]here the rights of third parties are affected, . . . their interests too must be considered.") (citing *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983)). Everflow admits, however, that the parties remain "free to craft a settlement that does not affect [Everflow]'s interests." ECF No. 124 at PageID #: 3057, 3058-59. That is exactly what they have done in the proposed First Amended Class Action Settlement Agreement (ECF No. 131-1).[11] The Court does not agree with Everflow that the terms of ECF No. 131-1 will have a detrimental effect on Everflow's rights and interests. Moreover, Everflow may still pursue any claims it has against RLH, Bobcat, and BW&P in the case it filed in state court.[12]

---

[11] The Parties have now defined those wells that are going to be transferred to Diamond Energy to specifically exclude wells in which Everflow has a working interest. *See* ECF No. 131-1 at PageID #: 3233-34, § 2.11.

[12] Section 3.7 of the proposed First Amended Class Action Settlement Agreement states, in pertinent part:
> Bobcat shall be solely responsible to resolve any disputes and/or claims with the Industry Partners that are attributable to Bobcat or BW&P's management and/or operation of any wells for the period from December 1, 2014 to the Closing (such that, after resolving those claims or disputes, the effective balance of each Industry Partners' interest in the Bobcat Production Trust Account would be $0). Bobcat shall indemnify members of the DL-JV Class and/or Diamond Energy against any and all such disputes and/or claims that may be asserted against them by the Industry Partners.

ECF No. 131-1 at PageID #: 3241.

9

(4:15CV1993)

The proposed First Amended Class Action Settlement Agreement (ECF No. 131-1) requires that Bobcat resign as Operator of the Everflow wells after giving not less than the 90-day minimum notice that the Operating Agreement (ECF No. 124-1) requires.  Under the Operating Agreement, Bobcat or BW&P has an absolute right to resign as Operator if Bobcat no longer intends to remain in that role.  The Operating Agreement specifically states:

> After one (1) year from the date of this Agreement, Operator may resign from its duties and obligations as operator at any time upon written notice of not less than ninety (90) days given to the Owners of the working interest in the Well. In this case, the owners owning a majority of the working interest in the Well shall select a new operator who shall assume the responsibilities and duties, and have the rights, prescribed for Operator by this Agreement.

ECF No. 124-1 at Page ID#: 3067-68, ¶ 13.

Therefore, the Parties included the following provision in the First Amended Class Action Settlement Agreement to address Bobcat's contractual obligations to Everflow, seek Everflow's approval to move forward with Diamond Energy as the new Operator, and resolve the disputes between Everflow and Bobcat:

> 3.20    Within five (5) business days of the Court's entry of Preliminary Approval, *Bobcat and BW&P shall resign* any and all rights or interests they may have as the Operator under the Operating Agreements with Diversified Gas & Oil, PLC, Everflow Eastern Partners, L.P. and Everflow Eastern, Inc., Bryan, LTD., and Ohio Valley Energy Systems Corp. and will notify those entities that these resignations are effective on the later of:  (a) ninety (90) days following that notice; or (b) the date of the Closing.  During the period before those resignations are effective, Diamond Energy shall operate certain Bobcat Wells, pursuant to the Master Service Agreement ("MSA") Subcontractor Agreement, attached hereto as Exhibit 7, through the Closing.  Starting within no less than ten (10) business days of the Court's entry of Preliminary Approval, the Parties will work together in good faith to obtain appropriate documentation that the Industry Partners:  (a) have approved Diamond Energy as replacement operator under their Operating Agreements; (b) accept BW&P's resignation as operator; and (c) terminate BW&P's duties and responsibilities under their Operating Agreements as of the Closing.

(4:15CV1993)

> Bobcat and BW&P shall be responsible for resolving any claims Diversified Gas & Oil, PLC, Everflow Eastern Partners, L.P., Everflow Eastern, Inc., Bryan LTD., and Ohio Valley Energy Systems Corp. have or may have attributable to Bobcat or BW&P's actions or omissions during the period from December 1, 2014 to the date on which BW&P's resignation as Operator becomes effective. In the event Bobcat and BW&P are unable to negotiate resolutions of the claims identified in the preceding sentence before the Closing, on terms and conditions satisfactory to them, in their sole discretion, then Bobcat will indemnify BW&P and Diamond Energy, or its affiliates, from the date of the Closing forward from and against any and all claims Diversified Gas & Oil, PLC, Everflow Eastern Partners, L.P., Everflow Eastern, Inc., Bryan LTD., and Ohio Valley Energy Systems Corp. may have or bring against BW&P, or Diamond Energy and/or its affiliates, with respect to the operation of any well that is the subject of this Agreement and where that claim is based on the operation of those wells from December 1, 2014 to the date on which BW&P's resignation becomes effective.
>
> Lastly, Bobcat and/or BW&P agree that they will not resign as Manager and/or Operator under the DL-JV Agreements.

ECF No. 131-1 at PageID #: 3248-49 (emphasis added). That is, the Parties have included the option, but not the obligation, for the Industry Partners to also replace Bobcat or BW&P with Diamond Energy as a new Operator. Diamond Energy and Bobcat have agreed they will seek Everflow's consent. If Everflow does not want Diamond Energy to serve as Operator for its working interests after the Closing, Everflow does not have to consent to Diamond Energy and can elect a different Operator under its Operating Agreement (ECF No. 124-1), assuming it has the contractually-required votes to do so.

Next, Everflow argues that the proposed First Amended Class Action Settlement Agreement (ECF No. 131-1) allows Everflow's revenue from its wells to be held and used to offset expenses of wells in which Everflow does not have an interest. To the contrary, there is nothing in the proposed settlement that changes the manner in which revenues and expenses are handled under the Operating Agreement (ECF No. 124-1). The proposed First Amended Class Action Settlement Agreement specifically provides that, from the Closing forward and as to the

11

(4:15CV1993)

various wells as to which Diamond Energy is acting as operator, Diamond Energy will establish a new production trust account

> to hold, manage, collect and receive production income from, among other things, the Diamond Wells, for which Diamond Energy will serve as the operator and manager, pay landowners, overriding royalty owners and carried working interest holders, and distribute the net profits, if any, to the non-operator joint venturers invested in, among others, the Diamond Wells, after payment of necessary expenses for the operation and management of the Diamond Wells.

ECF No. 131-1 at PageID #: 3233, § 2.10. This is not a change as this parallels the existing structure under the Bobcat Production Trust Account (ECF No. 131-1 at PageID #: 3231, § 2.3), which existing structure remains in place until the Closing (ECF No. 131-1 at PageID #: 3244-46, § 3.13). Diamond Energy, going forward, will establish separate Production Trust Accounts for the Class Members and Industry Partners for deposit of revenues and payment of the expenses of their respective working interests. This should promote ease of administration and avoid any future issues with the treatment of revenue and expenses under the different Operating Agreements.

Sections 3.12 and 3.13 of the proposed First Amended Class Action Settlement Agreement (ECF No. 131-1) discuss payment of revenues to Everflow and the other working interest owners. They provide, in pertinent part:

> 3.12 During the period after signing the Settlement Agreement and through Closing, Bobcat and/or BW&P, and during the period after the Closing, Bobcat: (a) will continue to collect revenues generated by the operation of the Bobcat Wells prior to the Closing; (b) from those revenues will continue to pay only the usual operating expenses of the wells incurred prior to the Closing (including monthly operating and pumping fees in the amounts for which the applicable Operating Agreements provide); (c) will continue to pay from the resulting net revenues, if any, distributions, if any, *due to* working interest owners *that are not* Bobcat, any of Bobcat's affiliates or members of the DL-JV Class; and (d) will not pay overriding royalties or carried working interests to Bobcat or any of its affiliates.

(4:15CV1993)

> 3.13  . . . At or prior to the Closing, Bobcat shall cause the Bobcat Production Trust Account to release any net account balances due to working interest owners in accordance with the governing Operating Agreement if and only to the extent the Bobcat Production Trust Account has sufficient cash on-hand to make a distribution.  If cash on-hand in the Bobcat Production Trust Account is a positive balance, but not sufficient to pay all net account balances due to working interest owners, Bobcat shall distribute the available cash pro rata to those working interest owners with net account balances due *in accordance with the governing Operating Agreement*.  These released funds will include those funds, if any, that are being held for plugging liabilities.
>
> * * *

ECF No. 131-1 at PageID #: 3243-44 (emphasis added).

Everflow contends §§ 3.12(c) and 3.13 of the proposed First Amended Class Action Settlement Agreement (ECF No. 131-1) place conditions on revenue payments to it contrary to those provided by ¶¶ 4 and 6 of Everflow's Operating Agreement (ECF No. 124-1).  ECF No. 132 at PageID #: 3425.  According to Everfow, § 3.13 attempts to govern relations with working interest owners who are not before this Court should Bobcat have insufficient funds to pay them under the terms of their operating agreements.  Therefore, §§ 3.12(c) and 3.13 should be amended.

The Court finds these sections have no impact on Everflow's receipt of revenues under its Operating Agreement (ECF No. 124-1) and specifically carve out exceptions to preserve the status quo for Bobcat and/or BW&P's distribution payments to Everflow.  Section 3.12(c) preserves distributions, if they are due to Everflow under its Operating Agreement, and disallows payments that may be owed to Bobcat and the DL-JV Class Members during this interim period. In addition, nowhere in the proposed First Amended Class Action Settlement Agreement (ECF No. 131-1) does it state that Bobcat will offset revenues from one of the Everflow wells with expenses from another Everflow well.  Rather, § 3.13 specifically requires that net account

13

(4:15CV1993)

balances released to the other working interest owners, which includes Everflow, will be done "in accordance with the governing Operating Agreement."

### III.

At the preliminary approval stage, the Court must only determine whether the proposed settlement is "fair, adequate, and reasonable." *United States v. Jones & Laughlin Steel Corp.*, 804 F.2d 348, 351 (6th Cir. 1986) (citing *Williams*, 720 F.2d at 921 (a settlement must ultimately be fair and reasonable to all those it affects, not just the class members)). Given that the Court will have an opportunity to analyze the proposed Settlement Agreement at a final approval hearing, "at this junction, [the Court] is not obligated to, nor could it reasonably, undertake a full and complete fairness review." *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 350 (N.D. Ohio 2001) (O'Malley, J.).

"In making a preliminary assessment of the fairness of the proposed settlement agreement, the Court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Id.* (internal quotation marks and citation omitted); *see also Smith v. Ajax Magnethermic Corp.*, No. 4:02CV0980, 2007 WL 3355080, at *5 (N.D. Ohio Nov. 7, 2007) (Economus, J.). That assessment takes into account the uncertainties, risks, and costs associated with continued litigation. *Ohio Public Interest Campaign v. Fisher Foods, Inc.*, 546 F. Supp. 1, 7 (N.D.Ohio 1982) (Lambros, J.). At this stage, a court should not second-guess the settlement terms and should presume that the settlement is fair in light of the extensive negotiating conducted by experienced counsel. *See In re Sulzer Hip Prosthesis and Knee Prosthesis Liab. Litig.*, No. 1:01CV9000, 2001 WL 1842315, at *13 (N.D. Ohio Oct. 20, 2001)

14

(4:15CV1993)

(O'Malley, J.) (citing *Armstrong v. Bd. Of Sch. Directors of City of Milwaukee*, 616 F.2d 305, 315 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998)).

Pursuant to the proposed First Amended Class Action Settlement Agreement (ECF No. 131-1), all Class Members receive the benefit of: (1) a new Operator for their wells; (2) resolution of the 4+ year ongoing dispute with Defendants; (3) a new and separate Production Trust Account from that of the Industry Partners; and, (4) a release of claims against them from Defendants for the hundreds of thousands of dollars in accounting fees, attorneys' fees, and settlement monies that Defendants have attempted to allocate to the Class Members (but not for otherwise unpaid joint interest billings).

The Court finds that:

A.      A list of the Class Members with their mailing addresses of record is attached to the proposed First Amended Class Action Settlement Agreement as Exhibit 3 (ECF No. 131-1 at PageID #: 3328-37).

B.      Based on the range of possible outcomes and the cost, delay, and uncertainty associated with further litigation, the proposed First Amended Class Action Settlement Agreement (ECF No. 131-1) is reasonable and cost-effective, and preliminary approval of the Settlement Agreement is warranted.

C.      The proposed First Amended Class Action Settlement Agreement (ECF No. 131-1) should be preliminarily approved.

D.      Notice should be given to the Class Members, affording them the opportunity to object to the proposed First Amended Class Action Settlement Agreement (ECF No. 131-1).

(4:15CV1993)

        E.        The proposed class notice of settlement ("Class Notice") (ECF No. 131-1 at PageID #: 3348-53) fairly presents the terms of the Settlement Agreement and the Class Members' rights and responsibilities in the settlement approval process.  The Class Notice should be provided to all Class Members by first class mail, postage prepaid, at their last known address as indicated by Defendants (or as updated through efforts of Lead Class Counsel, unless a different address has been provided by the Class Member).  Such mailing should be made by Lead Class Counsel within five (5) business days of entry of this Memorandum of Opinion and Order.  Notice in this manner is reasonable and the best notice practicable under the circumstances.  The mailing of the Notice to the Class Members provides due and sufficient notice of the proceedings, of the proposed settlement, and of the settlement approval procedure, thus satisfying the requirements of Fed. R. Civ. P. 23 and the requirements of due process.  The Court finds that such notice is the best notice practicable under the circumstances and will effectuate actual notice to the Class Members of the settlement.

        F.        The Class Notice (ECF No. 131-1 at PageID #: 3348-53) meets the requirements of Fed. R. Civ. P. 23(c)(2).  The Class Notice sufficiently describes, in clear, concise and easily understood language, the nature of the action and claims, respectively, the class certified, and the issues and defenses.  The Class Notice also states that the proposed First Amended Class Action Settlement Agreement (ECF No. 131-1), if approved, will be binding on all Class Members.  The Class Notice also summarizes the terms of the Settlement Agreement, the right of and manner for each Class Member to object to the Settlement Agreement, the right of each Class Member to appear by counsel at the Fairness Hearing, and the fact that the complete package of settlement documents is on file at the Court.  Furthermore, the Notice informs the Class Members that the

16

(4:15CV1993)

Settlement Agreement provides for the release of their claims as identified in the Settlement Agreement.

G. A hearing on the final approval of the settlement proposed in the Settlement Agreement (the "Fairness Hearing") should be held no sooner than thirty-five (35) days following the entry of this Order so that Settlement Class Members will have at least twenty-one (21) days from the mailing of the Class Notices to secure further information regarding the relief sought by the Joint Motion, to object to the Settlement Agreement should they choose to do so, and/or to engage counsel to appear at the Fairness Hearing.

H. Other good and sufficient cause exists for granting the relief requested in the Parties' Joint Motion for Preliminary Approval of First Amended Class Action Settlement (ECF No. 131).

**IV.**

Everflow Eastern Partners, L.P.'s Motion to Intervene for Limited Purpose of Objecting to Motion for Preliminary Approval of Settlement (ECF No. 124) is denied.

The Parties' Joint Motion for Preliminary Approval of First Amended Class Action Settlement (ECF No. 131) is granted. The proposed First Amended Class Action Settlement Agreement (ECF No. 131-1) does not replace or supersede Everflow's Operating Agreement (ECF No. 124-1) with the Operator of the wells in which Everflow has working interests.

1. The proposed First Amended Class Action Settlement Agreement (ECF No. 131-1) is hereby preliminarily approved.

2. The Court directs that notice of the Settlement Agreement be provided to the Class Members pursuant to Fed. R. Civ. P. 23(e)(1)(B). Mailing of the Class Notice should be

17

(4:15CV1993)

made by Lead Class Counsel within five (5) business days of entry of this Memorandum of Opinion and Order.

3. The Court approves the form and method of notice to Class Members as proposed therein with two (2) amendments. *See* Important Notice of Proposed Class Action Settlement Hearing ([ECF No. 131-1 at PageID #: 3348-53](ECF No. 131-1 at PageID #: 3348-53)).  First, the Class Notice shall provide that an objection or other responses to the final approval of the Settlement Agreement must be submitted in writing so that it is received by the Clerk of Court, Lead Class Counsel, and Defense Counsel on or before October 15, 2019.  Second, the Class Notice shall provide that the fairness hearing in this matter is set for Friday, October 25, 2019, at 1:30 p.m. in Courtroom 351, Thomas D. Lambros United States Court House, 125 Market Street, Youngstown, Ohio.  The fairness hearing will be conducted to finally determine the fairness, reasonableness and adequacy of the terms and conditions of the settlement set forth in the proposed First Amended Class Action Settlement Agreement and Exhibits thereto.

4. Lead Class Counsel shall file an Affidavit of Mailing with the Court and serve copies of that Affidavit on Defense Counsel prior to the date set for hearing on the Settlement Agreement.

5. Any Class Member may appear personally or by counsel at the hearing and may object or express his or her view regarding the Settlement Agreement.  However, a Class Member will not be heard, nor be entitled to contest the approval by the Court of the Settlement Agreement, unless on or before October 15, 2019, he or she files with the Clerk of Court written objections, together with any papers he or she proposes to submit to the Court at the fairness hearing, and on or before that date serves all such objections and other papers on Lead Class Counsel and Defense Counsel.

(4:15CV1993)

Any Class Member who does not file and serve his or her objections in this manner will be deemed to have waived his or her objections and will be forever precluded from making any objections to the fairness or adequacy of the proposed Settlement Agreement.

The Parties may submit briefs in response to any objection(s) on or before October 22, 2019.

The Parties' Joint Motion for Approval of Preliminary Settlement Agreement (without exhibits) ([ECF No. 122](#)) is denied as moot.

IT IS SO ORDERED.

| | |
|---|---|
| September 20, 2019 | /s/ Benita Y. Pearson |
| Date | Benita Y. Pearson |
| | United States District Judge |